**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **THOMAS LEVIEN,** et al. <br><br>    **v.** <br><br> **HIBU PLC,** et al. | **CIVIL ACTION** <br><br> **NO. 19-3239** |

## MEMORANDUM RE: MOTION TO DISMISS

Baylson, J.                                                                 **July 27, 2020**

## I.    Introduction

Thomas Levien and James Westhead ("Plaintiffs") bring this action on behalf of themselves and a class of similarly situated individuals alleging violations of British law.  Plaintiffs have sued various corporate entities and individuals (collectively, "Defendants") associated with the Yell/hibu family of companies, which published the Yellowbook phone and advertising directory.[1]  Federal subject matter jurisdiction is based on diversity as expanded by the Class Action Fairness Act.  The Amended Complaint states four claims to relief:

- **Count One**: Deceit under British Common Law, asserted against all Defendants;

- **Count Two**: Fraudulent Misrepresentation under Section 2(1) of the British Misrepresentation Act of 1967, asserted against all Defendants;

- **Count Three**: Violation of the British Financial Services and Markets Act ("FSMA") of 2000, Section 90A, asserted against Defendant hibu plc; and

- **Count Four**: Negligent Misstatements under British Common Law, asserted against all Defendants.

---

[1] The original company, "Yell Group plc," was renamed "hibu plc" in July 2012.  For events that occurred prior to the renaming, this Memorandum will refer to "Yell."  For events that occurred after the renaming, this Memorandum will refer to "hibu."  Collective references will be to "the Company" or "Yell/hibu."  The "H" in hibu is not capitalized in hibu's formal corporate name, and this Memorandum follows that convention.

On January 6, 2020, Defendants moved to dismiss the Amended Complaint under Federal Rule of Civil Procedure ("Rule") 9(b) (requirements for pleading fraud); Rule 12(b)(2) (lack of personal jurisdiction); Rule 12(b)(6) (failure to state a claim); Rule 17(b)(2) (corporate capacity to be sued), and the doctrine of *forum non conveniens*.  (ECF 17.)  Plaintiffs responded in opposition, (ECF 22), and Defendants replied in support, (ECF 25).  Oral argument was held on July 20, 2020.

For the reasons that follow, the Court concludes that under the doctrine of *forum non conveniens*, England is the proper forum to hear this case.  Therefore, Defendants' Motion to Dismiss will be **granted** and the Amended Complaint will be **dismissed** with prejudice.

## II.   Background

### A.   Parties

**Plaintiffs.**  There are two named Plaintiffs.

Plaintiff **Thomas Levien**, a Pennsylvania resident, is a son of a founder of Yellowbook (the predecessor to Yell/hibu) and was a shareholder and employee of Yell/hibu.  (ECF 14, Am. Compl. ¶¶ 1–3.)

Plaintiff **James Westhead**, a citizen of the United Kingdom, was a shareholder and the director of hibu Shareholders Grouping Limited, which was an unincorporated group of members who held shares in the Company.  (Am. Compl. ¶¶ 4–5.)

**Defendants.**  There are eight Corporate Defendants and nine Individual Defendants in this action.  The Corporate Defendants can be subdivided into United Kingdom entities and United States entities.  The U.K. Corporate Defendants (collectively, "hibu U.K.") are:

- **hibu plc**, which was a holding company for various subsidiaries engaged in the business of selling classified advertising and business directories.  hibu plc succeeded Yell Group plc.  (Am. Compl. ¶ 12.)  hibu plc was ultimately dissolved in January 2016.

- **hibu Group Limited**, which was the successor to hibu plc. (Am. Compl. ¶ 15.)

- **hibu (UK) Limited**, which was a subsidiary of hibu plc. (Am. Compl. ¶ 16.)

- **YH Holdings**, which was a subsidiary of hibu plc. (Am. Compl. ¶ 18.)

The U.S. Corporate Defendants (collectively, "hibu U.S.") are:

- **hibu Inc.**, formerly known as Yellowbook, Inc., which was the successor in interest to the U.S. subsidiary of hibu plc. (Am. Compl. ¶ 19.) hibu Inc. had "substantial operations" in King of Prussia. (Am. Compl. ¶ 20.)

- **hibu (USA) LLC**, which was the successor in interest to the U.S. subsidiary of hibu plc. (Am. Compl. ¶ 22.) hibu (USA) LLC had "substantial operations" in King of Prussia. (Am. Compl. ¶ 22.)

- **hibu of Pennsylvania, Inc.**, which was the successor in interest to the U.S. subsidiary of hibu plc. (Am. Compl. ¶ 23.)[2] hibu of Pennsylvania, Inc. had "substantial operations" in King of Prussia. (Am. Compl. ¶ 23.)

- **hibu Holdings (USA) Inc.**, which was the successor in interest to the U.S. subsidiary of hibu plc. (Am. Compl. ¶ 25.) hibu Holdings (USA) Inc. had "substantial operations" in King of Prussia. (Am. Compl. ¶ 25.)

The Individual Defendants are:

- **The Estate of John Michael Pocock**. (Am. Compl. ¶ 28.) During the relevant time period, Mr. Pocock was Yell's Chief Executive Officer and a member of the Board of Directors of Yell, which later became hibu plc. (Am. Compl. ¶ 27.)

- **Antony Jeffrey Bates**, who was the Chief Financial Officer of Yell, which later became hibu plc. (Am. Compl. ¶ 29.) Mr. Bates was also a member of Yell's Board of Directors. (Am. Compl. ¶ 29.)

- **Robert Charles Michael Wigley**, who was the Chairman of the Board of Directors of Yell, which later became hibu plc. (Am. Compl. ¶ 30.)

---

[2] Plaintiffs allege, upon information and belief, that hibu (USA) LLC and hibu of Pennsylvania, Inc. merged into hibu Inc. (Am. Compl. ¶ 24.)

- **Elizabeth Grace Chambers**, **John Bernard Coghlan**, **Toby Rufus Coppel**, **Carlos Espinosa de los Monteros**, **Kathleen Ruth Flaherty**,[3] and **Richard Hooper**, all of whom were members of Yell's Board of Directors during the relevant time.  (Am. Compl. ¶¶ 31–36.)

## B.    Factual History

Corporate Defendant hibu plc was preceded by Yell Group plc ("Yell"), which produced and sold advertising directories known as the "Yellowbook."  (Am. Compl. ¶ 69.)  The "Yell" entity was renamed "hibu" in July 2012.  (Am. Compl. ¶ 133.)  Yell/hibu, a public company, was traded on the London Stock Exchange.  (Am. Compl. ¶ 70.)  The events that gave rise to this litigation occurred over a three-year period from 2010 to 2013.

### 1.    October 2010–January 2011: Efforts to Seek a Buyer for Yell's American Businesses

In October 2010, Yell's Board of Directors requested that Yell's U.S. subsidiary, Yellowbook, Inc. (known as hibu Inc. after the Company's renaming), seek a buyer for the American businesses.  (Am. Compl. ¶ 80.)  The effort to solicit buyers was not disclosed to Plaintiffs or to the shareholders.  (Am. Compl. ¶ 82.)  Yell subsequently restructured its management team, which included hiring Defendant Pocock as Yell's CEO in November 2010. (Am. Compl. ¶ 83.)

Shortly after, in December 2010, the CEO of Yellowbook, Inc. reported to Yell's Board that two offers were made for the purchase of Yell's American businesses: an offer for "at least" $1.6 billion and an offer for "up to" $1.9 billion.  (Am. Compl. ¶ 88.)  Pocock and Yell's Board rejected these offers and in January 2011 advised Yellowbook, Inc. that they were no longer interested in locating a buyer for the American businesses.  (Am. Compl. ¶¶ 90–91.)  The offers

---

[3] Plaintiffs allege, upon information and belief, that Ms. Flaherty passed away in August 2018, and her Estate has been named as the relevant defendant.  (Am. Compl. ¶ 35.)

(and the rejection of the offers) were not disclosed to Yell's shareholders.  (Am. Compl. ¶ 92.)

### 2.     July 2011: The Transition Strategy

Yell retained a consultant, Booz & Co., to help turn the Company around.  (Am. Compl. ¶ 96.)  Booz & Co. devised a program—the "Transition Strategy"—that was designed to focus Yell on updating the Yellowbook directory to an internet-accessible format.  (Am. Compl. ¶ 97.)  The Transition Strategy, which was announced publicly, projected that Yell's "2011 revenue mix, 75 percent of earnings from print sources and 25 percent from digital sources, would move to 75 percent digital and 25 percent print by 2015."  (Am. Compl. ¶ 100.)  Additionally, Yell communicated projections of "significant overall growth in revenue, earnings, and cash flow" to shareholders.  (Am. Compl. ¶ 100.)

Yell publicized the Transition Strategy "to shareholders and lenders through written documents and meetings, many of which were held in the United States."  (Am. Compl. ¶ 99.)  Plaintiffs allege that some of the United States meetings were held at the Company's King of Prussia location, and that at these meetings Company leadership "cooperated in efforts to push [C]ompany employees . . . to invest in the future of the [C]ompany by the purchase of its stock."  (Am. Compl. ¶ 99.)

Notwithstanding the positive predictions for the Transition Strategy, Plaintiffs allege that Defendants "could not have reasonably believed those projections were achievable."  (Am. Compl. ¶ 101.)  Defendants Pocock and Wigley continued to send "unrealistically optimistic" reports to the Yell Board and to shareholders, exaggerating claims that the Company was making progress under the Transition Strategy.  (Am. Compl. ¶ 106.)  Plaintiffs allege that despite knowing the Transition Strategy "was a failure in every respect," the Yell Board painted a misleadingly positive picture of Yell's financial situation.  (Am. Compl. ¶ 106.)

### 3.     2011–2012: Expressed Optimism Despite Signs of Decline

Plaintiffs allege that despite the Company's decline, Defendants' statements and actions projected optimism about Yell's profitability.  Plaintiffs highlight two specific examples of actions taken by Defendants that projected a misleading confidence in Yell's financial viability: a July 2011 Regulatory News Service ("RNS") announcement, in which Defendant Bates represented that Yell was "cash generative and profitable," (Am. Compl. ¶ 113), and a November 2011 RNS announcement in which Defendant Wigley stated that he was so "convinced about the strength of the [C]ompany" that he was purchasing £ 1 million in Yell debt, (Am. Compl. ¶ 114).

But as early as March 2012, Plaintiffs allege that Yell began to "transfer significant assets to subsidiaries and was planning other accounting maneuvers, the undisclosed goal of which was to enable the [C]ompany to go into administration."  (Am. Compl. ¶ 119.)  Plaintiffs allege that red flags—flags that were not disclosed to shareholders—followed.  For example, in Yell's 2012 Annual Report, the Company portrayed a one-time impairment charge of £ 1.8 billion as a "routine accounting adjustment."  (Am. Compl. ¶ 124.)  Plaintiffs allege that this was "intended to disguise the [C]ompany's poor financial condition and its anticipated poor performance in 2013."  (Am. Compl. ¶ 125.)  According to Plaintiffs, the impairment charge "constituted an example of the stripping of assets from the [C]ompany."  (Am. Compl. ¶ 142.)  Plaintiffs point to the Company's transfer of "over £ 1.065 billion in cash" to a nontrading subsidiary as another example of the Company's efforts to "move assets and steer the [C]ompany toward administration" that was not disclosed to Plaintiffs.  (Am. Compl. ¶¶ 143, 144.)

Two other significant events occurred in the summer of 2012.

First, in July 2012 the Company decided to "abandon" its "Yell" name in favor of the "hibu" name, described by Plaintiffs as "a new, nonsensical and inexplicable lower-case name."

(Am. Compl. ¶ 133.)

Second, in August 2012, a six-member "Coordinating Committee," known as "CoCom," was constituted to represent the interests of the Company's lenders.  (Am. Compl. ¶ 134.)

### 4.    2013: hibu Became a Private Company

The Company's financial deterioration continued into 2013.  On July 25, 2013, hibu's directors suspended trading of the Company's stock on the London Stock Exchange and declared the stock worthless.  (Am. Compl. ¶ 151.)  Shortly after, the Company announced it had come to an agreement with CoCom (the committee of lenders): CoCom "agreed to write off £ 800 million of the total £ 2.3 billion" of the Company's debt load in exchange for control of the Company and the elimination of the shareholders' interests.  (Am. Compl. ¶ 152.)

In response to this announcement, and because the Board did not call a meeting of its own, the shareholders called for an extraordinary general meeting ("EGM").  (Am. Compl. ¶¶ 153–54.) The Board advised that "if a material number of the new directors proposed by the shareholders were appointed at the EGM, the [C]ompany expected to place itself into administration."  (Am. Compl. ¶ 155.)  The Board ultimately placed hibu into administration and hibu became a private company, "hibu Group Limited," that was controlled by the lenders.  (Am. Compl. ¶ 158.)

### C.    Statements Alleged to be Misleading

The statements that Plaintiffs allege were misleading are set forth in the substantive counts of the Amended Complaint.  The allegedly misleading statements include the following:

- The statement in a July 20, 2011 RNS announcement that "Yell was 'cash generative and profitable.'"  (Am. Compl. ¶ 166(d); Am. Compl. ¶ 179(d); Am. Compl. ¶ 200(b); Am. Compl. ¶ 212(d).)

- The statement in a November 15, 2011 RNS announcement that "the [C]ompany was in a position of financial strength.'"  (Am. Compl. ¶ 166(e); Am. Compl. ¶ 179(e); Am. Compl. ¶ 200(c); Am. Compl. ¶ 212(e).)

- The statement in a July 25, 2012 RNS announcement that hibu plc "was positioned to fully meet its interest payments and generate sufficient cash to repay its debts." (Am. Compl. ¶ 166(m); Am. Compl. ¶ 179(m); Am. Compl. ¶ 200(k); Am. Compl. ¶ 212(m).)

### D. Declarations and Affidavit[4]

Three declarations and one affidavit were submitted in connection with Defendants'

Motion to Dismiss.

Defendants included two declarations in support of their Motion:

- **The declaration of Christian Wells.** (ECF 18.) Christian Wells is General Counsel for Defendant Hibu Group Limited. Mr. Wells' declaration concerns the organization and structure of the Corporate Defendants.

- **The declaration of Lord David Neuberger.** (ECF 20.) Lord Neuberger is a legal expert. His declaration opines on the adequacy of the English courts; the merits of Plaintiffs' claims; and hibu plc's capacity to be sued.

Plaintiffs included one affidavit and one declaration in support of their Opposition to

Defendants' Motion:

- **The affidavit of Thomas Levien.** (ECF 23.) Named Plaintiff Thomas Levien is a former employee of the hibu organization. His declaration discusses the change in operations after Defendant Pocock assumed the role of CEO.

- **The declaration of Susan Ann Laws.** (ECF 24.) Susan Laws is a solicitor admitted to the practice of law in England and Wales. Ms. Laws' declaration addresses the company restoration process under English law.

## III. Procedural History

Plaintiffs commenced this action on July 25, 2019. (ECF 1.) Defendants moved to dismiss

the original complaint, (ECF 10), following which Plaintiffs timely filed an Amended Complaint,

---

[4] A motion to dismiss based on *forum non conveniens* "may be resolved on affidavits presented by the parties." Van Cauwenberghe v. Biard, 486 U.S. 517, 529 (1988); see also Copia Commc'ns, LLC v. AMResorts, L.P., No. 16-5575, 2017 WL 4012687, at *8 (E.D. Pa. Sept. 11, 2017) (Baylson, J.) ("Courts often decide the issue of *forum non conveniens* based only on affidavits submitted by the parties.").

(ECF 14).  Because the filing of the Amended Complaint mooted the pending Motion to Dismiss, the Court denied that motion.  (ECF 15.)

On January 6, 2020, Defendants filed the instant Motion to Dismiss the Amended Complaint.  (ECF 17.)  Plaintiffs responded in opposition, (ECF 22), and Defendants replied in support, (ECF 25).

The Court held oral argument on Defendants' Motion to Dismiss on July 20, 2020.  (ECF 27.)  The discussion during oral argument focused on questions the Court submitted to the parties in advance of the argument.

## IV.   Parties' Contentions

Defendants articulate six reasons why this case should be dismissed.  Plaintiffs respond in opposition to each point except the last.

First, Defendants argue that because the Company was dissolved in 2016, it does not have the capacity to be sued under English law and therefore must be dismissed from this case.[5]  (ECF 17-2, Mot. to Dismiss at 9.)  Plaintiffs respond that under English law, a dissolved entity can be "restored" and forced to answer to litigation, but that Defendants have not provided the information necessary for Plaintiffs to evaluate the possibility of restoration.  (ECF 22, Opp'n at 26–27.)

Second, Defendants contend that neither the Corporate Defendants nor the Individual Defendants are subject to the personal jurisdiction of this Court.  (Mot. to Dismiss at 9–16.)  Plaintiffs respond with various reasons for why either general jurisdiction or specific jurisdiction (or both) exists over each Defendant.  (Opp'n at 28–61.)

Third, Defendants urge the Court to apply the doctrine of *forum non conveniens* and

---

[5] Rule 17(b)(2) provides that: "Capacity to sue or be sued . . . for a corporation [is determined] by the law under which it was organized."

dismiss this case because it should have been brought in England.  (Mot. to Dismiss at 17–22.)

Plaintiffs oppose *forum non conveniens* dismissal, reasoning that since the statute of limitations

has expired for Plaintiffs' claims in England, there is no adequate alternative forum where this

case can be heard.  (Opp'n at 62–72.)  Plaintiffs rely heavily on their argument that Defendants

have not carried the burden of persuasion.

Fourth, Defendants argue that Pennsylvania's two-year statute of limitations for claims of

deceit, fraudulent misrepresentation, and negligent misstatement, 42 Pa. Cons. Stat. § 5524(7),

bars all of Plaintiffs' claims since the original complaint was not filed until six years after the

causes of action accrued.  (Mot. to Dismiss at 23.)  Plaintiffs respond that the statute of limitations

is an affirmative defense that should be pleaded in an answer (not asserted in a motion to dismiss),

so it cannot provide a basis for dismissal.  (Opp'n at 93–96.)

Fifth, Defendants assert that if the Court reaches the merits, Plaintiffs fail to state viable

claims under English law.  (Mot. to Dismiss at 23–36.)  Plaintiffs refute Defendants' contention

that the claims are insufficiently pleaded.  (Opp'n at 76–92.)

Sixth, Defendants argue that "at a minimum" the Corporate Defendants should be

dismissed from this case because there are no allegations of specific misconduct committed by

them.  (Mot. to Dismiss at 36–37.)  Plaintiffs offer no response to this argument.

## V.    Discussion

Although Defendants raise a threshold jurisdictional objection, the Court will temporarily

bypass that issue and instead address Defendants' argument that this case should be dismissed on

the grounds of *forum non conveniens* (or "FNC").  Determining personal jurisdiction would be a

"difficult" task because different issues apply to the various categories of Individual and Corporate

Defendants.  <u>Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.</u>, 549 U.S. 422, 436 (2007).

Therefore, in the interest of "convenience, fairness, and judicial economy," the Court will turn first to *forum non conveniens*.  Id. at 432.  Application of that doctrine compels the conclusion that England is the proper forum for Plaintiffs' claims.  Therefore, the Amended Complaint will be dismissed and the Court will not reach the personal jurisdiction or other arguments raised by Defendants.[6]

### A.      Legal Standard: *Forum Non Conveniens*

Under the doctrine of *forum non conveniens*, "a federal district court may dismiss an action on the ground that a court abroad is the more appropriate and convenient forum for adjudicating the controversy."  Id. at 425.  If trial in the plaintiff's chosen forum would "establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience" or if "trial in the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems," dismissal on grounds of *forum non conveniens* may be appropriate.  Koster v. (Am.) Lumbermens Mut. Cas. Co., 330 U.S. 518, 524 (1947).  "[T]he district court is accorded substantial flexibility in evaluating a *forum non conveniens* motion, . . . and each case turns on its facts."  Van Cauwenberghe, 486 U.S. at 529 (internal quotation marks and citation omitted); see also Piper Aircraft Co. v. Reyno, 54 U.S. 235, 257 (1981) ("The *forum non conveniens* determination is committed to the sound discretion of the trial court.").

The Third Circuit has articulated a three-part test for analyzing *forum non conveniens* motions.  *First*, the district court must "determine whether an adequate alternative forum can

---

[6] Although Defendants' remaining arguments in support of their Motion to Dismiss will not be considered, these issues may be raised anew in the English court.  See Auxer v. Alcoa, Inc., No. 9-995, 2010 WL 1337725, at *7 n.6 (W.D. Pa. Mar. 29, 2010) (dismissing on FNC grounds and noting that the defendant "shall not be hindered in any way from moving for a dismissal of the actions in Australia based upon the same arguments before this Court").

entertain the case." Windt v. Qwest Commc'ns Int'l, Inc., 529 F.3d 183, 189–190 (3d Cir. 2008). *Second*, "[i]f such a forum exists, the district court must . . . determine the appropriate amount of deference to be given the plaintiff's choice of forum." Id. at 190. *Third*, "the district court must balance the relevant public and private interest factors."[7]   Id.   Defendants bear the burden of persuasion on each of these elements. Lony v. E.I. Du Pont de Nemours & Co., 935 F.2d 604, 609 (3d Cir. 1991). The Court must "supply specific reasons and develop adequate facts to support its decision." Lacey v. Cessna Aircraft Co., 862 F.2d 38, 43 (3d Cir. 1988) ("Lacey I").

**B.    Analysis**

Each of the three *forum non conveniens* inquiries will be analyzed separately.   *First*, the Court concludes that England is an adequate alternative forum notwithstanding the expiration of England's six-year statute of limitations.   *Second*, the Court finds that Plaintiffs' choice of forum is entitled to a moderate amount of deference because one of the named Plaintiffs is from Pennsylvania.   *Third*, the Court has determined that the balance of the public and private interests clearly weighs in favor of dismissal for *forum non conveniens*.   On the public interest side, England's interest is far greater than that of Pennsylvania, retaining this case would necessitate learning and applying English law, and if *forum non conveniens* dismissal is denied, a Pennsylvania federal jury would be tasked with resolving a dispute that bears little connection to this state.   On the private interest side, the vast majority of evidence relevant to this case is located in England.

---

[7] Other Third Circuit cases have presented the sequence of the *forum non conveniens* inquiry in slightly different terms.   See Kisano Trade & Inv. Ltd. v. Lemster, 737 F.3d 869, 873 (3d Cir. 2013).   Because the Third Circuit recently reiterated the Windt articulation, see Trotter v. 7R Holdings LLC, 873 F.3d 435, 442 (3d Cir. 2017), and because both parties agreed at oral argument that there is no substantive difference between the two formulations, the Court will apply the Windt framework.

### 1.     Availability of Adequate Alternative Forum

The first step in the *forum non conveniens* analysis is to determine whether an adequate alternative forum exists.  See Piper Aircraft, 454 U.S. at 254 n.22 ("At the outset of any *forum non conveniens* inquiry, the court must determine whether there exists an alternative forum.").  The Supreme Court has instructed that an alternative forum will be deemed adequate for purposes of *forum non conveniens* if "the defendant is amenable to process in the other jurisdiction."  Id. (internal quotation marks and citation omitted).  In the "rare circumstances . . . where the remedy offered by the other forum is *clearly unsatisfactory*, the other forum may not be an adequate alternative."  Id. (emphasis added).  An alternative forum may be inadequate where, for example, it lacks subject matter jurisdiction over the action, id., where the plaintiff "cannot access evidence essential to prove" her claims, Eurofins Pharma US Holdings v. BioAlliance Pharma SA, 623 F.3d 147, 161 n.14 (3d Cir. 2010), or where the plaintiff would face "profound and extreme" delay, Bhatnagar v. Surrendra Overseas Ltd., 52 F.3d 1220, 1228 (3d Cir. 1995).  However, "[i]nadequacy of the alternative forum is rarely a barrier to *forum non conveniens* dismissal." Tech. Dev. Co., Ltd. v. Onischenko, 174 F. App'x 117, 120 (3d Cir. 2006) (nonprecedential).

As numerous courts have recognized, the judicial system in England is plainly adequate. Wilmot v. Marriott Hurghada Mgmt., Inc., 712 F. App'x 200, 204 (3d Cir. 2017) (nonprecedential) ("[T]he United Kingdom is an adequate alternative forum"); Jennings v. Boeing Co., 660 F. Supp. 796, 800 (E.D. Pa. 1987) (Vanartsdalen, J.) ("[O]rdinarily courts of . . . the United Kingdom are adequate alternatives to United States courts.").  Lord Neuberger's declaration confirms that "the English courts would be a competent and appropriate forum" to litigate Plaintiffs' claims, (ECF 20, Neuberger Decl. ¶ 10), and that Plaintiffs "would receive a fair hearing in the English courts," (id. ¶ 12).

Plaintiffs argue that England is an inadequate forum because Plaintiffs' claims are now time-barred there. Both parties agree that if Plaintiffs filed suit in England now, the claims would be barred by the applicable statute of limitations.[8] (Opp'n at 65; ECF 25, Reply at 5.) Where Plaintiffs and Defendants diverge is in their views about how the expired statute of limitations in England affects the *forum non conveniens* analysis. According to Plaintiffs, because there is "no question" that Plaintiffs' claims are now time-barred in England, England is not an adequate forum "as a matter of law." (Opp'n at 66.) Plaintiffs cite a number of courts of appeals cases for the proposition that an expired statute of limitations prevents the conclusion that an alternative forum is adequate.[9] Defendants reply that Plaintiffs' claims are also time-barred in this Court, so consideration of the other *forum non conveniens* elements is appropriate.[10] See, e.g., Auxer, 2010 WL 1337725, at *8 ("The fact that the applicable Australian statute of limitations may bar many of the claims . . . does not make Australia an inadequate forum.").

---

[8] At oral argument, both parties confirmed that the statute of limitations expired (at the latest) on July 25, 2019—exactly six years from the date that hibu's board suspended trading of the Company's stock and Plaintiffs discovered the alleged fraud. (Am. Compl. ¶ 151; Opp'n at 93.) The parties also confirmed that there is no savings statute or similar doctrine under English law that would credit Plaintiffs with the date they originally filed their complaint in this Court.

[9] See, e.g., DiFederico v. Marriott Int'l, Inc., 714 F.3d 796, 801 (4th Cir. 2013) ("[A]n expired statute of limitations is usually dispositive in a *forum non conveniens* analysis"); Chang v. Baxter Healthcare Corp., 599 F.3d 728, 736 (7th Cir. 2010) ("[I]f the plaintiff's suit would be time-barred in the alternative forum, his remedy there is inadequate"); Bank of Credit & Com. Int'l (Overseas) Ltd. v. State Bank, 273 F.3d 241, 246 (2d Cir. 2001) ("[A]n adequate forum does not exist if a statute of limitations bars the bringing of the case in that forum."); see also Carijano v. Occidental Petroleum Corp., 643 F.3d 1216, 1235 (9th Cir. 2011) ("[I]t was an abuse of discretion to dismiss on the basis of *forum non conveniens* without requiring [the defendant] to waive any statute of limitations defenses").

[10] Defendants may be correct that Plaintiffs' claims are time-barred in this Court. Because this action will be dismissed for *forum non conveniens*, the Court will not reach Defendants' arguments regarding Pennsylvania's statute of limitations and the applicability of the borrowing statute.

Plaintiffs' reliance on the now-expired statute of limitations in England is unpersuasive for two reasons.

First, neither the Supreme Court nor the Third Circuit[11] have explicitly held that, in order for an alternative forum to be adequate, the statute of limitations in that forum must be unexpired. Instead, the Supreme Court has described the relevant test as whether the defendants are "amenable to process" in the foreign forum, Piper Aircraft, 454 U.S. at 254 n.22, and the Third Circuit has described the test as whether the defendants are "amenable to process and [the] plaintiffs' claims are cognizable" in the alternative forum, Kisano, 737 F.3d at 873.  Plaintiffs correctly note that some courts in this Circuit have seemed to require an unexpired statute of limitations or have conditioned dismissal on the defendants' agreement to waive statute of limitations defenses.  See, e.g., Doe v. Ritz Carlton Hotel Co., LLC, 666 F. App'x 180, 183 (3d Cir. 2016) (nonprecedential) ("[T]he District Court reasonably concluded that . . . an adequate alternative forum [existed] because Appellee was amenable to service of process there, the tort of negligence was recognized there, and the *applicable statute of limitations had not expired*." (emphasis added)); Jones v. FC USA Inc., No. 17-1126, 2017 WL 5453497, at *3 (E.D. Pa. Nov. 14, 2017) (DuBois, J.) ("[T]he Court determines that the Dominican Republic is an adequate alternative forum only if the defendants agree to waive any statute of limitations defenses if plaintiff initiates a suit in the Dominican Republic."); Target Glob. Logistics Servs., Co. v. KVG, LLC, No. 15-4960, 2017 WL 1355371, at *3 (E.D. Pa. Apr. 12, 2017) (Perkin, M.J.) ("Generally, an adequate alternative forum exists where a defendant is amenable to service of process, plaintiff's claims are recognized there,

---

[11] At oral argument, the Court asked if either party could cite a precedential Third Circuit case addressing the adequacy of the foreign forum where the statute of limitations had expired in the foreign forum.  Neither party cited any precedential case law.  The Court also has been unable to locate any precedential Third Circuit decision addressing this issue.

and the applicable statute of limitations had not expired.").  However, Plaintiffs have not identified any binding authority that would require this Court to treat the fact that England's statute of limitations has expired as dispositive to the *forum non conveniens* inquiry.

Second, Plaintiffs' conduct suggests that they strategically filed their lawsuit in this Court to avoid the possibility of refiling the case in England, which indicates that the expiration of England's statute of limitations should not end the *forum non conveniens* analysis.  Footnote nine, <u>supra</u>, summarizes various courts of appeals cases supporting the proposition that an expired statute of limitations in a foreign forum prevents a *forum non conveniens* dismissal.  However, these cases include an important exception: if "it can be shown the plaintiff made a deliberate and tactical decision to run the statute of limitations for the purpose of avoiding dismissal in her preferred forum," then the unavailability of another forum may not require rejection of the *forum non conveniens* motion.  <u>DiFederico</u>, 714 F.3d at 801; <u>see also</u> <u>Chang</u>, 599 F.3d at 736.  In other words, if there is "evidence . . . that the plaintiff deliberately maneuvered to avoid trying the case in the alternative forum," then dismissal may be appropriate—notwithstanding the expired statute of limitations.  <u>DiFederico</u>, 714 F.3d at 801–02.

The facts and history of this case, including the timing of the filing of Plaintiffs' original complaint, requires the conclusion that this exception applies.  Plaintiffs filed their lawsuit in this Court on July 25, 2019—six years to the day that Plaintiffs "discovered Defendants' fraudulent conduct" on July 25, 2013.  (Opp'n at 93.)  At oral argument, the Court gave Plaintiffs' counsel multiple opportunities to explain Plaintiffs' counsel's delay in the filing of the original complaint.  The Court also asked Plaintiffs' counsel to explain why Plaintiffs did not take action to preserve their right to assert claims in an English forum (by, for example, filing the same complaint in a court in England or pursuing a standstill agreement with Defendants).

Plaintiffs' counsel, surprisingly, initially declined to answer citing the attorney-client privilege. As the Court pointed out at the argument, however, the privilege issue could have been avoided entirely if one or both of the named Plaintiffs had submitted affidavit(s) explaining the reasons for the decision not to file in England.

Plaintiffs' counsel also later argued that Plaintiffs brought the case here (and only here) because they felt there was a strong basis for jurisdiction and venue. This explanation is similarly unpersuasive. Plaintiffs reasonably could have foreseen a *forum non conveniens* challenge given the unique facts of this case.[12] The fact that Plaintiffs filed their original complaint in Pennsylvania federal court on the very day the six-year statute of limitations expired in England and have not provided any credible explanation for this decision suggests a "deliberate choice" that justifies disregarding the expiration of the statute of limitations in the alternative forum. Veba-Chemie A.G. v. M/V Getafix, 711 F.2d 1243, 1248 n.10 (5th Cir. 1983).

This conclusion is consistent with the purpose of the *forum non conveniens* doctrine. The Supreme Court has explained, and repeatedly emphasized, that "the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947); see also Koster, 330 U.S. at 831–32 (noting that *forum non conveniens* dismissal may be appropriate if there is a "clear showing of facts" that "establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience"). Denying a *forum non conveniens* dismissal in this case simply because Plaintiffs'

---

[12] These facts include that: all four causes of action are brought under British law; one of the two named Plaintiffs is English; the parent company is organized under the laws of the United Kingdom; the alleged misstatements occurred in England; and the parent company's stock was listed on the London Stock Exchange.

claims are now time-barred in England would contravene Gulf Oil.  Plaintiffs waited to file their original complaint until the *very day* the statute of limitations expired in England.  They could have pursued their right to a remedy by filing suit in England prior to the expiration of the statute of limitations or by seeking a standstill agreement to preserve their right to assert claims in an English forum.

The conclusion that Plaintiffs deliberately and strategically chose not to do either of these things is compelled by the facts of this case.  It is simply not fair to Defendants, to the Court, or to a potential group of jurors to reward that strategic decision by denying Defendants' *forum non conveniens* motion.  The Court must also emphasize that this case is based on diversity jurisdiction.  Plaintiffs could have brought their claims in Pennsylvania state court or in England, and there is no valid reason to ignore precedent and require Defendants to defend in this Court.

In sum, the possibility that Plaintiffs' claims may be time-barred in England does not prevent a *forum non conveniens* dismissal in this case.  Plaintiffs have not identified any Supreme Court or binding Third Circuit decision that requires this Court to embrace the principle that an expired statute of limitations is dispositive.  Further, in these circumstances where Plaintiffs filed their original complaint in this Court on the same day that the statute of limitations expired in England but did not take any action to preserve their right to assert claims in England, it would undermine the purpose of the *forum non conveniens* doctrine to hold that the alternative forum is inadequate as a matter of law.  The English courts will permit meaningful "litigation of the subject matter of th[is] dispute," and England is therefore an adequate forum for purposes of *forum non conveniens*.  Piper Aircraft, 454 U.S. at 254 n.22.

## 2. Amount of Deference Due to Plaintiffs' Choice of Forum

The second step in the *forum non conveniens* analysis is to determine the amount of

deference that Plaintiffs' choice of forum is entitled to.  When the plaintiff is a domestic resident or citizen, "a strong presumption of convenience exists" in favor of the chosen forum.  Windt, 529 F.3d at 190.  When the plaintiff is foreign, this presumption "applies with less force," because the "assumption that the chosen forum is appropriate is in such cases less reasonable."  Sinochem, 549 U.S. at 430 (internal quotation marks and citation omitted).

Plaintiffs' forum preference is the Eastern District of Pennsylvania since they chose to file their lawsuit here.  One of the two named plaintiffs, Thomas Levien, is a resident of Pennsylvania. (Am. Compl. ¶ 1.)  Approximately 320 putative class members reside in Pennsylvania as well. (Am. Compl. ¶ 9.)  The other named Plaintiff, James Westhead, is a citizen of the United Kingdom. (Am. Compl. ¶ 4.)  Therefore, looking to the citizenship of the parties does not resolve the question of how much deference Plaintiffs' choice of forum is entitled to because no matter where this case is ultimately litigated, one of the named Plaintiffs will be in a foreign forum.

The Third Circuit has made clear that the focus of the deference analysis "is on convenience, not on the particular significance of a party's residence or citizenship or a party's ability to invoke a United States court's jurisdiction."  Kisano, 737 F.3d at 875.  Therefore, a foreign plaintiff can "bolster the amount of deference due their choice by making a *strong* showing of convenience."  Windt, 529 F.3d at 190 (emphasis added); see also Kisano, 737 F.3d at 876 ("[T]he greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*." (internal quotation marks and citation omitted)).  Therefore, the amount of deference that Plaintiffs' choice of forum is entitled to turns on convenience.

Much of the relevant evidence will be in England, which suggests that litigating there will

be more convenient for the parties.  Plaintiffs highlight "the activities that took place in King of Prussia, Pennsylvania" and the need to obtain "discovery of witnesses and documents with respect to these events."  (Opp'n at 71.)  However, Plaintiffs' contention that it is more convenient to engage in discovery related to the King of Prussia meetings in this forum is belied by the Amended Complaint, which alleges that the written communications "were accessed by computer."  (Am. Compl. ¶ 53.)  If the written communications are in a computer-accessible format, then the convenience of engaging in discovery here as compared to England is reduced since the documents can be transferred electronically.  Cf. Markham v. Ethicon, Inc., No. 19-5464, 2020 WL 1158546, at *2 (E.D. Pa. Mar. 6, 2020) (Baylson, J.) ("Given the availability of modern technology, the possible location of records elsewhere is of limited significance." (internal quotation marks and citation omitted)); Lomanno v. Black, 285 F. Supp. 2d 637, 647 (E.D. Pa. 2003) (Kelly, J.) ("[T]he technological advances of recent years have significantly reduced the weight of [the location of books and records] in the balance of convenience analysis." (internal quotation marks and citation omitted)).  Additionally, to the extent Plaintiffs seek discovery from Defendants Bates and Wigley (who sometimes accompanied Defendant Pocock to the King of Prussia meetings), litigating this case in England would be more convenient than litigating here because both Bates and Wigley are citizens of the United Kingdom.  (Am. Compl. ¶¶ 51, 29–30.)  Finally, notwithstanding the King of Prussia meetings, "most relevant documents and witnesses will be in England, including documents and witnesses of . . . the London Stock Exchange, the Company's outside advisors, . . . former employees, officers, or directors, [and the] hibu Shareholder Grouping."  (Mot. to Dismiss at 19.)

Plaintiffs argue that litigating this case here is not as inconvenient as Defendants contend because companies within the hibu family initiated and pursued litigation in nearby federal courts

on several recent occasions.  Entities within the hibu hierarchy availed themselves of the jurisdiction of United States courts at least twice: in 2013, when hibu plc brought a breach of contract action in the Southern District of New York, (ECF 22-13), and in 2014, when the hibu U.S. entities initiated bankruptcy proceedings in the Eastern District of New York, (ECF 22-10). Plaintiffs contend that this undermines Defendants' position that litigating here would be inconvenient.  Cf. Kisano, 737 F.3d at 876 n.2 ("If it is *such* a burden for [the plaintiff] to address a lawsuit in a neighboring United States jurisdiction in the English language, it seriously undermines an argument that his forum choice in this case was motivated by his convenience.").

However, assuming that the existence of other litigation is germane to the *forum non conveniens* analysis,[13] neither the breach of contract case nor the bankruptcy case were related to this action and, in any event, both of those cases have been closed.  See In re hibu Inc., No. 14-70323, ECF No. 38 (Order Closing Chapter 15 Cases); hibu plc v. Walsh, No. 13-3762, ECF No. 21 (Stipulation of Voluntary Dismissal With Prejudice).  Therefore, even assuming that there may have been efficiencies from litigating this case here while the New York cases were pending (which is questionable, since those cases were unrelated to this one), there is no additional convenience since the New York cases have been resolved.  See Windt, 529 F.3d at 197 (finding that the district court did not "improperly ignore[]" U.S.-based litigation in granting FNC dismissal because the other cases had been previously terminated or involved issues that were less significant).

---

[13] The Third Circuit has impliedly endorsed consideration of the existence of other litigation in the FNC analysis.  See Windt, 529 F.3d at 196–97 (confirming that the district court was permitted to consider related litigation pending in the Netherlands to determine whether retaining the case would be oppressive and vexatious to the defendant).  Other courts of appeals have noted that the existence of related litigation "is not listed as a relevant factor in the *forum non conveniens* analysis laid out in [the Supreme Court's decision in] Gilbert," and so should not be given "decisive weight."  Guidi v. Inter-Cont'l Hotels Corp., 224 F.3d 142, 148 (2d Cir. 2000).

In summary, the Court will accord Plaintiffs' choice of forum some deference given that one of the named Plaintiffs is a resident of Pennsylvania.  However, the "considerable evidence" demonstrating that England is, by far, the more convenient forum for the parties and the witnesses indicates that "extending full deference" is not warranted.  Kisano, 737 F.3d at 875.

### 3.    Balance of Public and Private Interest Factors

Since an adequate alternative forum exists, Defendants must "show that the balance of [the public and private interest] factors tips decidedly in favor of trial in [England]" to overcome the moderate amount of deference given to Plaintiffs' chosen forum and to prevail on their *forum non conveniens* motion.  Lacey v. Cessna Aircraft Co., 932 F.2d 170, 180 (3d Cir. 1991).  Defendants have satisfied that burden and have shown that the balance of relevant public and private interests far outweighs the moderate amount of deference that Plaintiffs' choice of forum is entitled to.

### a.    Public Interest Factors

Public interests that should be considered include "administrative difficulties arising from increasingly overburdened courts; local interests in having the case tried at home; desire to have the forum match the law that is to govern the case to avoid conflict of laws problems or difficulty in the application of foreign law; and avoiding unfairly burdening citizens in an unrelated forum with jury duty."  Kisano, 737 F.3d at 873.  These factors overwhelmingly indicate that this case should be dismissed on grounds of *forum non conveniens*.[14]

First, England's interest in this case is far greater than Pennsylvania's interest.  The vast majority of the parties are English; all four causes of action are brought under British law; the allegedly fraudulent statements were published through the London Stock Exchange–owned RNS;

---

[14] The first public interest factor—administrative difficulties flowing from court congestion—will not be given any weight.

and the alleged fraud concerns an English company listed on the London Stock Exchange. England's interest in regulating companies organized and operating under its laws and ensuring the proper application of its statutes indicates that dismissal is required here.  Compare Eurofins Pharma, 623 F.3d at 162 ("[D]ismissal on *forum non conveniens* grounds is appropriate because the litigation is focused on French defendants' alleged breaches of contract and fiduciary duties, which took place in France, and, therefore France has a more significant interest in resolving the dispute than Delaware."), with In re Corel Corp. Inc. Sec. Litig., 147 F. Supp. 2d 363, 367 (E.D. Pa. 2001) (Brody, J.) (finding a local interest in the case because "[m]any of plaintiffs' securities transactions were conducted in the United States, on United States stock exchanges, by United States citizens").

Said differently, "the locus of the alleged culpable conduct" is in England, and that conduct has little connection to Plaintiffs' chosen forum.  Van Cauwenberghe, 486 U.S. at 528.  To the extent Pennsylvania has an interest, it is limited to the fact that one of the named Plaintiffs is a resident of this state and that an unspecified number of corporate meetings attended by some Defendants occurred in King of Prussia, Pennsylvania.  This is not enough to transform the case into a "local dispute."  Windt, 529 F.3d at 193; see also id. (concluding that a complaint that alleged "fraud and mismanagement perpetrated on a Dutch company by executives, board members and a corporate shareholder of that Dutch company" did not raise a "local dispute").  The minimal interest of Pennsylvania compared to the significant interest of England weighs heavily in favor of dismissal.  See Gulf Oil, 330 U.S. at 509 ("There is a local interest in having localized controversies decided at home.").

This conclusion is consistent with Paraschos v. YBM Magnex International, Inc., 130 F. Supp. 2d 642 (E.D. Pa. 2000).  In Paraschos, Judge Newcomer found that Canada's significant

interest in a case that "pertain[ed] to Canadian registered securities, [and was] brought by a purported class of investors who [were] virtually all Canadian, against predominantly Canadian defendants, concerning a Canadian corporation whose stock was sold only on Canadian stock exchanges" justified *forum non conveniens* dismissal. Id. at 645. Here, similarly, this case is about a company that was registered on the London Stock Exchange and is brought against predominantly English defendants. It is readily apparent that, as in Paraschos, Pennsylvania's interest is slight compared to that of England, which indicates that this case should be dismissed.

Second, all four of Plaintiffs' causes of action are brought under British law. At oral argument, the parties agreed that if this case stays here English law will apply. Therefore, if the Motion to Dismiss is denied, the Court will face the daunting task of learning and applying British law. Plaintiffs acknowledge that this "admittedly carries some weight," (Opp'n at 74), because as the Supreme Court has repeatedly recognized, the need to apply foreign law weighs in favor of dismissing the case. See Piper Aircraft, 454 U.S. at 260 n.29 ("[T]he need to apply foreign law favors dismissal"); Gulf Oil, 330 U.S. at 509 ("There is an appropriateness . . . in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."). The burden that learning and applying English law would impose on the Court if the case is retained weighs heavily in favor of dismissal. See, e.g., Windt, 529 F.3d at 193 (affirming the district court's conclusion that the need to apply various provisions of the Dutch Civil Code favored dismissal).

Third, if this case remains here and is not resolved before trial, then a Pennsylvania jury will be tasked with hearing evidence related to the actions of mainly British defendants and determining liability under a foreign legal regime. The significant burden this would impose is

not justified given that the dispute between Plaintiffs and Defendants has little connection to Pennsylvania.  See, e.g., Gulf Oil, 330 U.S. at 508–09 ("Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."); Windt, 529 F.3d at 193 ("[W]ithout a dispute local to the community of New Jersey, there is little public interest in subjecting that community to the burdens of jury service.").  The unfairness of burdening Pennsylvania residents with jury duty to resolve a dispute that bears little connection to this district weighs in favor of *forum non conveniens* dismissal.

### b.    Private Interest Factors

Private interests that should be considered include "the ease of access to sources of proof; ability to compel witness attendance if necessary; means to view relevant premises and objects; and any other potential obstacle impeding an otherwise easy, cost-effective, and expeditious trial." Kisano, 737 F.3d at 873.  The parties focus their arguments on the factor assessing ease of access to sources of proof.[15]  A party seeking dismissal based on *forum non conveniens* need not "describe with specificity the evidence they would not be able to obtain if trial were held in the United States."  Piper Aircraft, 454 U.S. at 258.  Instead, Defendants' obligation is to "provide enough information to enable the District Court to balance the parties' interests."  Id. at 300 (internal quotation marks and citation omitted).

Here, the Court has enough information to balance the parties' interests and determine how the private interests weigh.  The vast majority of relevant documents, communications, and witnesses are located in England.  Four of eight Corporate Defendants and five of nine Individual Defendants are in England.  Many of the relevant nonparties, including the London Stock

---

[15] Nothing in the record indicates that any of the other private factors weigh in favor of or against dismissal.

Exchange (which listed Yell/hibu's stock and published the RNS announcements that contained many of the alleged misstatements) and hibu's advisors and employees, are located in London. Undoubtedly, some of the evidence in this case may be located in the United States.  But most of the witnesses that Plaintiffs identify as located in Pennsylvania are parties to this action (i.e., the Corporate Defendants who are incorporated in Delaware and the 320 putative shareholders who are located in Pennsylvania), and it is much easier to seek discovery from a party than from a nonparty.  See Auxer, 2010 WL 1337725, at *10 ("[D]ocumentary evidence from a party is much more accessible than the evidence from Australian non-parties").   The significant amount of evidence located in England "far outweighs the evidence in this forum," which favors *forum non conveniens* dismissal.  Abiaad v. Gen. Motors Corp., 538 F. Supp. 537, 542 (E.D. Pa. 1982) (Weiner, J.); see also Eurofins Pharma, 623 F.3d at 162 ("[T]he location of the great majority of proof and witnesses in France favors dismissal.").

<strong>c.      Balancing</strong>

All of the applicable public and private interest factors weigh in favor of dismissal.  Some of the interests, such as the interest in allowing a court in England to resolve a dispute that concerns predominantly English actors, the need to apply foreign law, and the location of evidence, weigh especially heavily in favor of the foreign forum.  The "balance of factors is strongly in favor of . . . [Defendants]," which indicates that the Court should not defer to Plaintiffs' choice of forum and should instead dismiss this case for *forum non conveniens*.  Lacey I, 862 F.2d at 43.

<strong>C.      Summary of <em>Forum Non Conveniens</em> Analysis</strong>

England is plainly an adequate forum that is competent to hear this case notwithstanding the possible expiration of the statute of limitations.  Plaintiffs' choice of forum is entitled to a moderate amount of deference since one of the named Plaintiffs is from Pennsylvania.  However,

the deference to Plaintiffs' choice of forum is overcome by the "balance of the public and private interests [which] clearly favors" dismissing this case for *forum non conveniens*.  Kisano, 737 F.3d at 873.   The public interests favor dismissal because (1) England's interest far exceeds Pennsylvania's interest; (2) retaining this case would require that the Court learn and apply English law; and (3) if the case is not dismissed, then a Pennsylvania jury would be burdened with resolving a dispute that lacks a connection to this district.  The private interests also favor dismissal as the majority of evidence relevant to this case is located in England.

Litigating in England "will best serve the convenience of the parties and the ends of justice."  Koster, 330 U.S. at 527.  Therefore, this case will be dismissed for *forum non conveniens*.

**VI.     Conclusion**

For the foregoing reasons, Defendants' Motion to Dismiss is **granted** and this case is **dismissed** with prejudice.

An appropriate Order follows.

O:\CIVIL 19\19-3239 Levien et al v. Hibu PLC\19cv3239 Memorandum re Motion to Dismiss.docx